MILLEDGE, STANLEY, Associate Judge.
This is an appeal from a summary decree in favor of the appellees in a suit by appellant to foreclose a second mortgage, the ■only claim of default being the failure to make the payments under a lease of a sprinkler system. The facts are extraordinary.
Louis Spector, the owner of some land in Dade County, contracted with Louis Spector and Sons, general contractors, for the construction of an industrial building on the land. The contract called for a fire sprinkler system and the general contractor had one installed by Moore Pipe & Sprinkler Company. A “lease” agreement was entered into between Moore and the general contractor “leasing” the sprinklers to the contractor for 60 months at $225.88 monthly with an option to renew for another five years at $75 annually. Upon the expiration of the lease, Moore could, by the terms, enter the premises and remove the sprinkler system. The document provided that regardless of how the system might be affixed to the building, it was to remain personal property. The instrument requires the written consent of the owner of the land (Louis Spector) unless this was waived by Moore. It is neither alleged nor proven, that the written consent was given. The complaint suggests the idea of authority given by Louis Spector to Spector and Sons to bind the owner by the sprinkler “lease” by the allegation (admitted by the defendant, Futuro Properties, Inc.) that “as part of the construction contract, and to provide the building with a fire sprinkler system, Spector & Sons, as lessee, entered into a Lease Agreement with Moore Pipe and Sprinkler Company, as lessor * * *.” This is not equivalent to a direct allegation that Spector and Sons were authorized on behalf -of Louis Spector to enter into this particular “lease” and to bind Louis Spector by its terms. It is clear from the requirement in the lease that the owner’s written consent be obtained; that Moore did not deal with the contractor on the basis that he had authority to contract in this way for the owner. No subsequent ratification of the “lease” is pleaded. Whatever interest Moore had under this instrument, it assigned to Coral Gables First National Bank.
Louis Spector sold the land to Vent Vue Window Corporation. The complaint al-' leges, and the answer denies (and there is no proof) that as part of the purchase price Vent Vue assumed the rental indebtedness of $13,552.80. Plaintiff attached to his complaint a copy of an unsigned “statement” by Spector & Sons (the contractors) to Vent Vue Corporation deducting from the cost of construction the item of sprinkler system, $13,552.80. Since the purchase is from Louis Spector who is not shown to have become obligated for the sprinklers, we fail to see how this statement, even if admissible as evidence, could be proof that Vent Vue has assumed the debt. There is even less basis for a conclusion that Vent Vue pledged its land to Louis Spector to pay a debt of Spector & Sons due Moore. At the time of the conveyance from Louis Spector to Vent Vue, June 8, 1956, Vent Vue gave Louis Spector a purchase money mortgage, inferior to a first mortgage of $250,000, in the amount of $66,526.58. This is the mortgage sought to be foreclosed against Futuro Properties, Inc., who acquired title from Vent Vue. The plaintiff contends that the sprinkler lease constituted an obligation and encumbrance on the land and so he seeks to apply the convenant in the second mortgage “to pay all and singular the taxes, assessments, levies, liabilities, obligations and encumbrances of every nature on said described property * * *.”
If the contract between Louis Spec-tor and Vent Vue is that, having the price of the sprinklers deducted from the agreed purchase price of the land, Vent Vue is to *572 assume the obligation of payment and to secure Louis Spector in the event he makes the sprinkler payments on default by Vent Vue, the latter gives Louis Spector a lien on the land, surely such an intention would be evidenced by some very definite and specific covenant in the mortgage. The cardinal rule of construction of a contract is to ascertain the intention of the parties. We can hardly conceive of reasonable men, intending to contract about so unusual a .subject, relying upon the language of the covenant quoted. This general language found in the printed portion of the second mortgage is designed to cover situations which cannot be specifically stated. Taxes, assessment, levies, and the like will arise in the future and a mortgagee needs a covenant to require the mortgagor to pay these and like encumbrances as they make their appearance. It is a typical application of the rule of construction, ejusdem generis. In Forest Preserve Real Estate Improvement Corp. v. Miller, 379 Ill. 375, 41 N.E.2d 526, a contract for the purchase of realty did not require the purchaser to pay taxes but it required of the purchaser that he would not suffer any mechanic’s lien “or other lien” to attach to the property which would be superior to the rights of the vendor. The words “other lien” under doctrine ejusdem generis were held to refer only to liens of like character to mechanic’s liens and hence, vendor had no right to demand payment of taxes.
The plaintiff also contends that since both the second and first mortgages contain covenants against waste, active and permissive, Louis Spector was forced to make the sprinkler payments to prevent Moore (or the bank) from removing the sprinkler system and so Futuro, by not making these payments, was permitting waste. The bank is not a party to this proceeding so we avoid expressing an opinion as to its rights and remedies. Suffice it to say that other than his statement, the plaintiff has not demonstrated, under the facts as they appear in this case, just how this feared result might be reached.
The main argument by the plaintiff is that Futuro acquired title with knowledge, actual, constructive, or implied, of this unusual sprinkler transaction. Concluding that the plaintiff has no lien on-, the land arising out of this sprinkler transaction, the question of notice has no application. We think that the chancellor was correct in entering a summary decree for the defendants, and accordingly, it is affirmed.
Affirmed.
HORTON, C. J., and CARROLL,. CHAS., J., concur.